# Linton *versus* Hart.

The owner of a reversion has a right to sell the whole or a part of it, and the law will apportion the rent; and the right of apportionment attaches the instant the sale is made.

No action of the purchaser, in dispossessing the tenant of the part purchased after such severance, can affect the rent accruing out of the unsold part, and remaining in the undisturbed possession of the tenant.

Nor will the fact that the original reversioner became a party to the trespass, by which the tenant was dispossessed of the part sold, by aiding his vendee to commit it, change the rule, or suspend the rent for that part, which was unsold, and which remained in the possession of the tenant.

[Linton *v.* Hart.]

ERROR to the District Court of *Allegheny county.*

This was an action of covenant on a lease, brought by John Linton, the plaintiff below and plaintiff in error, to recover from Joseph Hart, the defendant, the sum of $118.75, one quarter's rent due on the 14th September, 1854. The defendant pleaded entry and eviction by the plaintiff, and the rent estopped, upon which issue was joined. And on the trial of the case, the following facts appeared in evidence. On the 13th day of June, 1853, the plaintiff leased to the defendant a ferry on the Allegheny river, called "the Sharpsburg Ferry," together with the boats, appurtenances, and privileges—a house and the piece of ground · attached thereto, for and during the period of five years from the 14th day of June, 1853. For which the defendant covenanted to pay the yearly rent of $475 in quarterly payments. The defendant entered into possession in pursuance of the lease. On the 14th day of August, 1854, Linton sold a part of the land embraced in the lease to the Allegheny Valley Railroad Company, and agreed to release the said company from all damages by reason of the location and construction of their railroad. Under this agreement the railroad company entered into the premises purchased, and constructed their road, and in such manner, as defendant alleged, as to greatly interfere with his use and enjoyment of the ferry, and so as to impede and obstruct the road to and from the same.

The plaintiff submitted in writing the following points to the Court, viz. :

The Court is requested to charge the jury, 1. That an eviction, such as to stay rent, must be made and continued by the party himself, or his agent, and in his name, and not by any person to whom he might sell, and against whom the tenant may have a sufficient remedy.

2. That the plaintiff in releasing the right of way to the Railroad Company, did no more than he had a right to do, as the owner of the fee ; and by so doing did not interfere with any remedy his tenant might have, and the plaintiff is entitled to recover.

3. That the plea of eviction being a peculiar one, the defendant will be held to strict proof, more particularly since he has elected a sufficient remedy by action of trespass.

5. That the entry of the Company by virtue of the release from Linton, as regards the reversion, was an entry by authority of law, and as regards the term, could not affect the right of Hart, and did not profess to conclude him.

The Court charged the jury as follows :

" The only question of law which arises in this case, is whether · such an authority is given by both or either of these agreements as to render the plaintiff responsible for the entry and the eviction

[Linton v. Hart.]

of the defendant by the railroad company. The law is well settled, that if the lessor wrongfully enters upon a part of the demised premises, and evicts the tenant, the whole of the ensuing rent is thereby suspended. Is then the plaintiff liable for the consequences of the entry and eviction made by the railroad company, under his agreement of the 19th of September, 1853? Looking to the terms of the agreement, it seems to me that he must be considered as having authorized the entry on the demised premises, and that he is to be visited with all the consequences of the eviction in the same manner as he would be if he had himself entered and evicted the defendant. The only question of fact for the determination of the jury is, when did the railroad company enter and evict the defendant from a portion of the demised premises? Was it during and before the expiration of the quarter ending the 14th of September, 1854? If before that date, the plaintiff is not entitled to recover. If it was after the 14th of September, 1854, when the rent demanded became due, then the plaintiff is entitled to recover.

"The defendant's points are sufficiently answered in the charge, and the Court refuses to charge as requested by plaintiff's counsel, in the points by them submitted."

The plaintiff excepted to the ruling of the Court. The jury found for the defendant: and the plaintiff removed the cause by writ of error into this Court, and assigned the following specification of errors:

1. The Court erred in refusing to charge the jury as requested by the plaintiff's counsel in the points submitted.

2. The Court erred in charging the jury that the entry of the railroad company was the entry of the plaintiff, who should be visited with all the consequences.

*G. P. Hamilton* and *Arthurs*, for plaintiff in error.—Linton, by his agreement, sold to the railroad company only his fee in the premises. He had a right to sell, and if the defendant is injured by the entry and acts of the company, he could maintain his action against it: 10 *Harris* 144. The acts of Linton were not an eviction, and did not suspend the rent for the whole of the premises, or prevent an apportionment of it. The defendant was still in possession of the ferry. A sale of a portion of demised premises is followed by an apportionment of the rent. Even entry into a part extinguishes the rent but *pro tanto*.

*Barton*, for defendant in error.—The landlord is liable in this case for the acts of the company in taking possession. This was not an ordinary sale of the reversion, but an immediate transfer of the estate; and when the railroad company entered by virtue

[Linton *v.*Hart.]

of it, the landlord's right to rent was suspended. It was an actual eviction of the defendant. Linton sold to the company an immediate right of entry and possession, and the company acted upon this by evicting the defendant. Linton was a trespasser ; for all who order or procure a trespass to be committed are principals: 8 *Barr* 217.

The opinion of the Court was delivered by

LEWIS, C. J.—The law will not apportion rent in favour of a wrongdoer, and therefore if the landlord wrongfully dispossesses his tenant of any portion of the demised premises, the rent is suspended for the whole. But the owner of a reversion has a right to sell the whole or any part of it. Such right is incident to the right of property, and necessary to the full enjoyment of it. The exercise of it is not wrongful, and therefore, in the case of a sale of a part of the reversion, the law will apportion the rent; and the right of apportionment attaches the moment the sale is made. No action of the purchaser, or his aiders and abetters, in dispossessing the tenant of the part purchased, after such severance can have any effect upon the rent growing out of the unsold part remaining in his undisturbed possession. It matters not that the original reversioner, after such severance, becomes a party to the trespass by aiding his vendee in committing it. The trespass has relation only to the part sold, and cannot be visited upon the other part of the premises. These principles are fully affirmed in Reed *v.* Ward, 10 *Harris* 144. If this be the law in the case of a sale voluntarily made for the mere convenience of the reversioner, it applies with much greater reason to a sale made under compulsion to a railroad corporation having authority from the Commonwealth to take the property for the purposes of the road without the consent of the owner. In such a case there is no reason for visiting the reversioner with the consequences of a trespass committed by the corporation. It had no right to take the estate of the tenant without compensation given or secured. The sale of the reversioner's interest in the part so taken conferred no such right, and the tenant has an ample remedy for the injury without depriving his landlord of the just portion of rent due for the premises enjoyed under the lease.

So far as the instructions of the Court were in opposition to these principles, there was error.

Judgment reversed and *venire facias de novo* awarded.