## Roan et ux. v. Bingaman et ux.

*J. K. Johnston* (with him *Philip H. Johnston*), for plaintiffs.

*J. C. Furst*, for defendants.

FLEMING, P. J., March 18, 1929.—This is a case stated to determine marketable title to real estate. The facts set forth in the case stated are as follows:

1. The said Robert Roan and Laura Roan, his wife, became vested jointly in fee of a certain lot or piece of land, situate in the North Ward of Bellefonte Borough, Centre County, Pennsylvania, and bounded on the north by Curtin Street, on the east by Allegheny Street, on the south by premises formerly of Mrs. Evelyn R. H. Rogers, and on the west by an alley. Thereon is erected a large brick dwelling-house, the title thereto having been conveyed to the said named plaintiffs by E. R. Taylor, Sheriff of Centre County, by deed dated Feb. 28, 1925, and recorded in Sheriff's Deed Book No. 1, page 214, in the Recorder's Office of Centre County.

2. That under agreement entered into by plaintiffs with the defendants, the title to 125 feet along Curtin Street and 100 feet along Allegheny Street and including a large brick dwelling-house was sold for the consideration of $9000, the title thereto to be conveyed free of encumbrances on March 1, 1929.

3. That on March 1, 1929, Robert W. Roan and Laura Roan, his wife, did execute, sign and acknowledge a deed to the said George C. Bingaman and Mamie W. Bingaman, his wife, for and in consideration of the price agreed upon, namely, $9000. Which said deed was turned over, or offered to be turned over, to the said grantees, and the plaintiffs are ready to turn over the said general warrantee deed to the said grantees, being the defendants, upon payment of the said purchase money, which is to be paid as follows: $7000 in cash and $2000 mortgage in favor of the said grantors; this mortgage, however, to be a second lien on the premises, said premises being first liable to a judgment lien of $5000, for the securing of which the said George C. Bingaman and Mamie W. Bingaman, his wife, did sign and deliver judgment note or notes to the First National Bank of Bellefonte, Pennsylvania, on March 1, 1929, which said notes were retained by said bank until a few days ago, when they were returned to the said grantees.

4. And that the said grantees did sign, execute and acknowledge bond and mortgage for and in favor of the said grantors for the said $2000 on March 1, 1929, being the same date that the transaction was to be closed, and being the same date that the deed was executed.

5. That Robert W. Roan, on Feb. 10, 1929, became accommodation endorser for S. E. Poorman of a note payable in thirty days in favor of the First National Bank of Bellefonte, Pennsylvania, in the sum of $3650, and that the said First National Bank did, on March 1, 1929, enter the said note against the said S. H. Poorman and Robert W. Roan to judgment No. 10, May Term, 1929, in the Court of Common Pleas of Centre County. And the said First National Bank, upon entering said judgment, notified George C. Bingaman, one of the purchasers, that it became necessary for the payment of said judgment by the said Robert W. Roan, the accommodation drawer, before they could pass the title for the purpose of making the judgment loan on the premises being purchased, and further notice was served on Mr. Bingaman that if title was taken by him and his wife under the circumstances, a *scire facias* would be issued against him and his wife as terre-tenants to revive said judgment on the said premises so as to affect their title thus being acquired.

6. The title being conveyed was held in the name of Robert W. Roan and Laura Roan, his wife, as tenants in entirety, and the accommodation obligation was given by Robert W. Roan personally, and his wife was not a party, or did not have any interest, directly or indirectly, therein.

7. If the court is of the opinion that the said deed vests a good marketable fee simple title in George C. Bingaman and Mamie W. Bingaman, his wife, in said lands identified and fully described in said deed, then judgment to be entered in favor of the plaintiffs and against the defendants; but if the court is of the opinion the said referred to judgment is a lien upon the premises in question and the estate in fee simple is not being conveyed, then judgment to be entered for the defendants. Both the plaintiffs and defendants reserve the right to take an appeal to the Supreme Court.

### Discussion.

The simple question for our consideration is, where a husband and wife hold an estate in land by entireties, is their joint deed sufficient to pass title

in the land free from the effect of a judgment entered against the husband individually?

That this question requires an affirmative answer is beyond question. Many lower court decisions have so held; the United States District Court for the Eastern District of Pennsylvania, in Getty *v.* Hupfel's Sons, 292 Fed. Repr. 178, has so held; the Circuit Court of Appeals, Third Circuit, in A. Hupfel's Sons *v.* Getty, 299 Fed. Repr. 939, has so held, and our Supreme Court, in Beihl *v.* Martin, 236 Pa. 519, clearly states the rule governing the determination of this question.

In the latter case it was contended on the part of the appellant that Fleek *v.* Zillhaver, 117 Pa. 213, had decided the question involved here in the negative rather than in the affirmative. Mr. Justice Stewart, after speaking of the peculiar character of the estate existing where husband and wife hold lands jointly, says:

"It is this striking peculiarity of the estate—the entirety alike in husband and wife—that operates to exempt it from execution and sale at the suit of a creditor of either separately. The enforcement of such process would be the taking of the property of one to pay the debt of another. But may not the interest of either be seized in satisfaction of his or her appropriate and exclusive debt? Before answering, let us clearly understand what is here meant by interest. For convenience of illustration, take the case of a husband. Towards everybody in the world except the wife he has exclusive possession during her lifetime, and his right to the enjoyment of the estate during this period may not be interfered with at the suit of his creditor. So much is conceded, and has been expressly decided by this court in a number of cases, notably in McCurdy *v.* Canning, 64 Pa. 39. With possession denied a purchaser at an enforced sale during the joint life of the parties to the estate, what is there to acquire by purchase? Nothing but a bare expectancy, a chance that the husband may survive the wife and have the entirety to himself. May that expectancy be made the subject of a judicial sale? Certainly never up to this time have we said that it can be. The case of Fleek *v.* Zillhaver, 117 Pa. 213, marks the extremest limit to which we have gone in subjecting estates of this character to demands of separate creditors. We cannot allow that that case was an attempt to modify or escape from conditions which up to that time had been universally recognized as necessarily resulting from the nature and character of this particular estate. On the contrary, the result there reached can be vindicated only as it can be shown to be in harmony with these conditions; for it was along lines thought to be entirely consistent with these that the conclusion there expressed was reached. The controversy there arose after the death of the wife. . . .

"This case (referring to Fleek *v.* Zillhaver, *supra*—the parentheses are ours) stands as authority with respect to what it expressly rules, viz., that the interest of husband and wife where they hold by entireties may be the subject of lien, and that upon the death of either, the lien against the survivor may be enforced. It is to be observed that it does not rule that there can be a severance in ownership in any other way than by the death of one or other of the parties, or by voluntary alienation by both. So it will become apparent, on a recital of the facts we have here, that the present case falls without the scope of that. Here, the estate in land as originally created continues, and what we have to determine is the capacity of the parties, husband and wife, by their joint deed to convey the interest of both free and discharged of the lien of the husband's judgments. . . .

"We start in the discussion with an admission which the case of Fleek *v.* Zillhaver, *supra*, compels, that the judgments here obtained against the husband were liens. But upon what? Certainly not upon the entirety that was in the husband, for the entirety of estate was in the wife equally with the husband, and being in its nature indivisible, it would follow necessarily that any encumbrance upon the estate would rest upon that of the other; a result which, of course, could not be justified or allowed except as the inherent attributes of the estate are to be wholly disregarded. There remains to the husband a right of survivorship, by virtue of which, in case he survived the wife, while taking no estate, yet, because the entirety in the wife is by her death extinguished, his entirety embraces every interest in the estate. Contingent though this ultimate divestiture be, the expectancy is, nevertheless, a vested interest, and as such may be the subject of lien. All possible titles, vested or contingent, in land, under our law, may be taken in execution and sold, provided it be a real interest, whether legal or equitable. . . .

"Admitting, then, the lien on the expectant interest, the question occurs, when is it enforceable? At once, or only upon the realization of the expectancy? A little reflection upon the nature of the estate by entireties should make it apparent, we think, that while the estate continues, it is utterly impossible for either party, without the other joining, to sell or assign his or her interest therein, even the expectancy of survivorship. The rights of the parties are fixed by the deed of conveyance to them, and by that instrument each took an entirety made up of indivisible parts. Any alienation by one, the other not consenting, of any interest whatever in the estate, if allowed, would be an abridgment *pro tanto* of the rights of the other. By their joint act they admittedly have the right to sell and dispose of the whole estate; by their joint act they may strip the estate of its attributes and create a wholly different estate in themselves; but neither can divest himself or herself of any part without in some way infringing upon the rights of the other. The wife has the right to initiate as well as the husband. Suppose she desires to sell the land—a right which is hers—and the husband consent, what does his consent amount to if he has parted with his expectancy of survivorship to a stranger? Such circumstances would operate to deny to the wife the enjoyment of an inseparable incident of ownership, the right of alienation. Now, stating it broadly but correctly, nothing can be taken into execution and sold as the property of a debtor except property over which the debtor has the right of disposition by sale or otherwise. If, then, the husband cannot sell or dispose of his expectancy of survivorship, it follows that it may not be taken into execution. By this reasoning we reach the conclusion that the lien on the expectant interest of the husband becomes enforceable only when the expectancy ripens into a realized fact; then execution is not upon an expectancy, but upon an actual existing estate. Another unavoidable conclusion results which must prove fatal to the appellant's contention here. If the husband may not alien his right of expectancy, and if, because of this, the expectancy may not be taken in execution—since in either case it would be an appropriation of the wife's right of property, in that it would deprive her of the right to sell with the husband's consent—for equal reason, a judgment operating as a lien upon the husband's expectancy would be an interference with the wife's right of alienation with the consent of the husband, except as that lien is divested by such sale. The owner of such lien must hold it subject to its possible extinction in either of two events, the predecease of the husband or the alienation of the estate by the joint act of the parties. . . ."

In the instant case, the First National Bank of Bellefonte held its lien against Robert W. Roan, the husband plaintiff, subject to these two last-named possibilities of extinction. The joint act of the plaintiffs in conveying the land in question to the defendants extinguishes the lien of the bank, so far as the land conveyed is concerned, and the threat to revive such against the defendants, as terre-tenants, if such joint conveyance be made, is without foundation in law or possibility of execution.

*Decree.*

And now, March 18, 1929, judgment is entered for the plaintiffs and against the defendants.

From S. D. Gettig, Bellefonte, Pa.