**In re Rachael COTTERMAN, Debtor.**

**Bankruptcy No. 83–00426E.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Dec. 3, 1986.

Thomas P. Lutz, Pittsburgh, Pa., for Tri-Continental Leasing Corp., movant.

Christopher A. Beck, Pittsburgh, Pa., for the debtor.

## OPINION ON MOTION FOR RELIEF FROM STAY

WARREN W. BENTZ, Bankruptcy Judge.

### Facts

The Debtor, Rachael Cotterman, filed a petition for relief under Chapter 7 of the Bankruptcy Code on September 23, 1983.

On or about August 31, 1981, Tri-Continental Leasing Corporation ("Tri-Continental") obtained a judgment against W.A. Cotterman, the Debtor's husband, who is not a debtor in this bankruptcy proceeding. The judgment was in the amount of $402,-619.83, and was based on non-payment of rent under equipment leases between Mr. Cotterman, as lessee, and Tri-Continental, as lessor.

Prior to the date of the petition initiating this bankruptcy case, Tri-Continental commenced a lawsuit against the Debtor in the United States District Court for the Western District of Pennsylvania. Tri-Continental's complaint alleged that the Debtor signed a written document purporting to guarantee the rental payments owed by Mr. Cotterman to Tri-Continental under the aforementioned equipment leases. The Debtor disputed Tri-Continental's claim that the written document constitutes a guarantee of Mr. Cotterman's obligation. In the lawsuit, Tri-Continental sought damages from the Debtor in the amount of $355,641.60. The District Court ordered the lawsuit closed without disposition of the merits shortly after the Debtor filed this bankruptcy case.

In her bankruptcy schedules, the Debtor claimed the following property as exempt under § 522(b)(2):

1. Residence valued at $45,000,
2. Lot and garage adjacent to residence valued at $25,000,
3. 3½ acre tract located in Clarion County, Pennsylvania valued at $25,-000.

The Cottermans own these assets as tenants by the entirety.

The time period for filing objections to the Debtor's claimed exemptions passed without objection by any party, as did the time period for filing objections to discharge. Although the Debtor has attended a § 524(d) discharge hearing, we have not yet issued an order granting the Debtor her Chapter 7 discharge.

On February 18, 1984, Tri-Continental filed a Motion for Relief from the Automatic Stay ("Motion") to continue its lawsuit against the Debtor in District Court. We held a hearing on the Motion on March 13, 1984, after which the parties submitted briefs.

### Issue

■ Where one spouse has filed an individual petition under Chapter 7 and claimed entireties property as exempt, is an alleged prepetition joint creditor of both spouses, who has obtained a prepetition judgment against only the nonfiling spouse, entitled to relief from the automatic stay prior to the Debtor's discharge to continue a prepetition lawsuit against the Debtor-spouse so as to obtain a judgment—thereby obtaining joint in personam liability against the couple and enabling the creditor to satisfy his joint claim out of the couple's entireties property—when denying relief from the automatic stay and granting the Debtor a discharge would frustrate the joint creditor's right under state law to execute on the couple's jointly-owned assets?

### Discussion

Tri-Continental argues that we must grant relief from stay now so that it may

obtain a judgment against the Debtor prior to her discharge. Otherwise, the Debtor's alleged in personam liability to Tri-Continental will be discharged, leaving Tri-Continental with a judgment against only Mr. Cotterman. Tri-Continental would then be unable to execute on the Cottermans' entireties property since, under Pennsylvania law, a creditor of only one spouse may not satisfy his claim by executing on entireties property. Tri-Continental reasons that Congress never intended the Bankruptcy Code to be used to perpetrate fraud or to shield assets from creditors, which would be the result if the Debtor received a discharge prior to Tri-Continental's obtaining a judgment against her.

The Debtor, on the other hand, argues that Tri-Continental's Motion for Relief from the Automatic Stay is in substance a complaint to determine dischargeability of debt under § 523(c). The Debtor argues that the deadline for filing a complaint objecting to discharge passed without any objections to discharge having been filed by anyone and therefore, Tri-Continental's Motion ought to be dismissed.

The Debtor further argues that prior to the commencement of this bankruptcy case, Tri-Continental was simply a creditor with a general unsecured disputed claim against the Debtor. To lift the automatic stay and permit Tri-Continental to enter a judgment, the Debtor argues, would allow Tri-Continental to elevate its position against her to that of a secured creditor subsequent to the filing of her bankruptcy petition.

This case illustrates a difficult problem that confronts a creditor who holds a joint claim against a husband and wife when only one spouse files bankruptcy. It is clear under Pennsylvania law outside of bankruptcy that a creditor may proceed to judgment and reach entireties property to satisfy the joint debts of a husband and wife. *Napotnik v. Equibank & Parkvale Savings Ass'n.*, 679 F.2d 316, 320 (3rd Cir. 1982), *citing, Consumer's Time Credit, Inc. v. Remark Corp.*, 248 F.Supp. 158 (E.D.Pa.1965); *Swope v. Turner*, 193 Pa.

Super. 217, 163 A.2d 714 (1960); *Arch Street Building and Loan Ass'n. v. Sook*, 104 Pa.Super. 269, 158 A. 595 (1932). The problem arises in bankruptcy when only one spouse files bankruptcy and receives a discharge before the joint creditor is able to reduce his claim to judgment and execute on the couple's entireties property to satisfy his claim. After the Debtor's in personam liability is discharged by the bankruptcy, the creditor is left with an in personam claim against only the non-filing spouse which, if reduced to judgment, will not enable the creditor to reach the couple's entireties property to satisfy his claim. *See Napotnik*, 679 F.2d at 319, *citing, Amadon v. Amadon*, 359 Pa. 434, 59 A.2d 135 (1948) (creditor of either spouse alone cannot acquire by judgment an enforceable lien on entireties property). To preserve and protect its state law right to reach entireties property in satisfaction of its joint claim, the creditor here has moved the Bankruptcy Court for relief prior to the Debtor's discharge.

To date, the courts have fashioned at least two types of relief to protect a joint creditor faced with the aforementioned problem. One remedy is to grant the joint creditor relief from the automatic stay and withhold the Debtor's discharge while the joint creditor proceeds to judgment and execution against the entireties property in state (or other appropriate) court. *See, e.g., Chippenham Hospital, Inc. v. Bondurant*, 716 F.2d 1057 (4th Cir.1983). Thereafter, the Debtor's in personam liability on the joint debt is discharged in her bankruptcy, thereby absolving her of personal liability for any deficiency.

Another remedy is to direct the trustee to sell the entireties property and distribute the proceeds to the couple's joint creditors. *See, e.g., Sumy v. Schlossberg*, 777 F.2d 921 (4th Cir.1985) (under state law, to the extent that the debtor and non-filing spouse are indebted jointly, property owned as tenants by the entireties may not be exempted under 11 U.S.C. § 522(b)(2)(B) and the trustee may administer such prop-

erty for benefit of joint creditors under Bankruptcy Code).

We agree that joint creditors are entitled, and should in some manner be allowed, to reach entireties property in the bankruptcy context to satisfy their claims. To hold otherwise would result in legal fraud on joint creditors. As one court explained:

The purpose of the bankruptcy act was to equitably distribute the assets of distressed debtors among their creditors and to discharge them from further liability after this had been done. It was never contemplated that it should be used to perpetrate fraud or to shield assets from creditors. It is elementary that a bankrupt is not entitled to a discharge unless and until he has honestly surrendered his assets for the benefit of creditors; and he certainly is not in position to ask a court of bankruptcy, which is a court of equity, to grant him a discharge under the statute, when the effect of the discharge will be to withdraw from the reach of creditors property properly applicable to the satisfaction of their claims ...

There is ample authority for the proposition that where the property is not reachable through bankruptcy, but can be reached by a creditor under state laws, the court of bankruptcy should delay granting a discharge to the bankrupt to enable the creditor to proceed thereunder in the state courts. (Citations omitted).

*Chippenham Hospital, Inc. v. Bondurant,* 716 F.2d 1057 (4th Cir.1983), *citing, Phillips v. Krakower,* 46 F.2d 764, 765–66 (4th Cir.1931).

After we grant Tri-Continental relief from the automatic stay, Tri-Continental will then continue its lawsuit against the Debtor in District Court. If Tri-Continental obtains a judgment against the Debtor, Tri-Continental may reach the Cottermans' entireties property despite the Debtor's claimed exemptions in such property. *See Napotnik v. Equibank & Parkvale Sav-*

*ings Ass'n.,* 679 F.2d 316 (3rd Cir.1982) (holding that § 522(b)(2)(B) did not exempt entireties property in Pennsylvania held by the Debtor and his wife, who did not join in her husband's bankruptcy petition, where joint creditor held a judgment against both of them). If, on the other hand, the Debtor is successful in defending the suit in District Court, she may exempt the entireties property she has claimed assuming, as it appears, that Tri-Continental is the Cottermans' only joint creditor.[1]

The Debtor's argument that Tri-Continental's Motion for Relief from Stay is in substance an untimely complaint to determine dischargeability which we should decline to hear is without merit. The issue in this proceeding is not dischargeability, which relates to the forgiveness of the Debtor's personal liability on Tri-Continental's disputed claim. The Debtor's *personal* liability to Tri-Continental, if any, will be discharged in this bankruptcy regardless of whether Tri-Continental can reach the Cottermans' jointly-owned assets to satisfy its claim. 11 U.S.C. § 524(a)(1) ("A discharge in a case under this title voids any judgment at any time obtained, to the extent that such judgment is a determination of the *personal liability* of the debtor ....") (emphasis added). However, it is well established that valid unavoidable *liens* pass through a bankruptcy case unaffected, *see, e.g., Long v. Bullard,* 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886), and thus may be enforced against exempt and non-exempt property of the debtor. *See* 11 U.S.C. § 522(c); *see also,* Legislative history to § 522(c), H.R.Rep. No. 595, 95th Cong., 1st Sess., 361 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 76 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5861, 6316 ("The bankruptcy discharge will not prevent enforcement of valid liens. The rule of *Long v. Bullard,* 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886) is accepted with respect to the enforcement of valid liens on non-exempt property as well as exempt

---

**1.** In her brief, the debtor states that there are no other judgments or liens entered against her and her husband. However, the pleadings are

silent on the issue of whether the Cottermans have joint creditors other than Tri-Continental.

property"). Therefore, what *is* at issue here is Tri-Continental's ability to reach the Cottermans' entireties property (an in rem action) not Tri-Continental's standing to object to the dischargeability of the Debtor's in personam liability on Tri-Continental's alleged claim.

Whether Tri-Continental will be able to reach the Cottermans' entireties property to satisfy its joint claim depends first on Tri-Continental's ability to reduce its joint claim against the Cottermans to judgment. Upon obtaining a joint judgment and docketing the same, Tri-Continental can then reach the Cottermans' entireties property in satisfaction of its claim.[2] However, before Tri-Continental can take the first step of obtaining a judgment against the Debtor, we must first modify the automatic stay. Therefore, the procedural posture of this proceeding has been properly framed as, and in substance is, a Motion for Relief from the Automatic Stay.

■ Equally unpersuasive is the Debtor's argument that by modifying the automatic stay to enable Tri-Continental to obtain judgment against her in District Court, we are somehow elevating a prepetition unsecured claim to a postpetition secured claim.

■ The Debtor's argument ignores the fact that prior to this bankruptcy case, Tri-Continental had a joint claim against the Cottermans which, if reduced to judgment, would have enabled Tri-Continental to reach the Cottermans' jointly-held assets in satisfaction of that claim. The commencement of this bankruptcy case, more specifically, operation of the automatic stay, effectively erected a fence around the Cottermans' entireties assets. That fence keeps individual creditors, who under state law may *not* reach entireties assets to satisfy individual claims, as well as joint creditors, who under state law *may* reach entireties properties to satisfy their claims, from reaching those assets. The imposition of the automatic stay does not, by

itself, diminish a joint creditor's state law rights to satisfy his claim out of entireties property. Likewise, lifting of the automatic stay, by itself, does not enhance a joint creditor's state law rights to satisfy his claim out of entireties property. The automatic stay simply prevents the joint creditor from *exercising* his state law right to reach entireties property during the bankruptcy, thereby maintaining the status quo as it existed prepetition. Therefore, when we grant Tri-Continental relief from the automatic stay, we will not be elevating an unsecured claim to a secured claim or otherwise be adding more assets to the pool of assets which were available prepetition to satisfy Tri-Continental's claim. We will simply be opening the fence to allow joint creditors to exercise their state law rights and reach assets which, only because of the bankruptcy, were temporarily unreachable.

Adopting the Debtor's position in this case would spawn a rule for future cases which, if applied to its logical extreme, would yield results which are contrary to the fresh start and equitable division policies that form the cornerstone of the bankruptcy system. To illustrate the unacceptable results which would follow from adopting the Debtor's position, let us assume the following hypothetical case: assume that a millionaire husband and wife own *all* of their property as tenants by the entireties; that they have no significant debts but are temporarily short of cash; that they borrow $100,000 from a bank on a short term note signed by both of them; and that the bank does not obtain a lien or security interest on the couple's assets because of the couple's apparent wealth and past good credit rating.

Applying the rule urged by the Debtor herein, if one of the spouses in our hypothetical files bankruptcy, and receives a discharge, the joint creditor bank will be precluded from reaching the couple's entireties assets (their only assets) to satisfy its debt. The millionaire husband and wife

---

**2.** In Pennsylvania, the docketing of a judgment results in a lien upon all real property of the debtor or debtors in the county in which the judgment is docketed. *See* 42 Pa.Cons.Stat.Ann. § 4303(A) (Purdons Supp.1986).

will have thus devised a means by which they can utilize this Court to prevent collection of a debt which is otherwise fully collectible in state or federal courts, while retaining wealth far in excess of anything contemplated by the Bankruptcy Code or by state law. The ultimate result would be that the couple will have used the Bankruptcy Code to avoid paying even a dime towards their debts (including their joint debts) when they had ample assets to pay their debts in full. The policy of equitable division of assets would be frustrated, and the concept of a fresh start would be perverted. The unfairness of this result is manifest and is supported neither by the Bankruptcy Code, the law of this Commonwealth, equity nor good conscience. The Debtor's argument must be, and is, rejected.

For the reasons discussed above, we will grant Tri-Continental's motion for relief from the automatic stay by separate order, pending conclusion of Tri-Continental's lawsuit against the Debtor and execution thereunder, following which this Court will move forward on Debtor's discharge.